# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                           No. CR 13-3515 JB

ISAAC BARELA,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Objection to Presentence Report and Request for Variance and Sentencing Memorandum, filed June 24, 2014 (Doc. 27)("Objections"). The Court held a sentencing hearing on July 8, 2014. The primary issue is whether there is sufficient evidence to establish that Defendant Isaac Barela used or possessed a firearm in connection with another offense to support a 4-level enhancement under § 2K2.1(b)(6). The Court will overrule Barela's Objections in part and sustain them in part. The Court finds, by a preponderance of the evidence, that Barela used or possessed a firearm in connection with another felony offense, that is, a drug trafficking offense, because he admitted to dealing drugs, and the New Mexico State Police ("NMSP") agents found at his residence 0.25 ounces -- or roughly seven grams -- of heroin, boxes of hypodermic needles, a large amount of cash, and six scales. The Court will sustain Barela's objection that the 27.35 milliliters of substance that was found in the needles is not pure heroin, because the Court cannot find by a preponderance of the evidence that all 27.35 milliliters is heroin.

## FACTUAL BACKGROUND

In a Plea Agreement, filed March 24, 2014 (Doc. 22)("Plea Agreement"), Barela admitted the following facts:

> On July 23, 2013, a group of police officers came to my house to arrest me on a warrant. I gave them permission to search the house. In my closet they found a Winchester long rifle and a handgun. The Winchester was a model 190, .22 L/LR rifle, with serial number B1793201. The handgun was a Llama, model Micro-Max 380, .380 AUTO caliber pistol, with serial number 71040373703. Both weapons were loaded. I knew that they were in my closet. I acknowledge that the government can prove that the firearms were not manufactured in the state of New Mexico and that they therefore traveled in interstate commerce.

Plea Agreement ¶ 7, at 3.

During the search, NMSP agents observed hypodermic needles on the bathroom sink, which "contained a brown liquid, which the agents believed to be heroin." Presentence Investigation Report ¶ 11, at 4, disclosed June 5, 2014 ("PSR"). "On the side of the sink, agents noticed an open slide cellular telephone, several unused hypodermic needles with the caps removed, a scale with possible heroin residue, and a metal spoon with what appeared to be cocaine." PSR ¶ 11, at 4. The agents placed Barela under arrest; Barela "allowed the agents to search his residence after admitting he was dealing drugs." PSR ¶ 11, at 4.

> A thorough search of Barela's bathroom located a tall box of needles, with several small boxes, each containing an open bag of needles loaded with a brown liquid that appeared to be heroin. Additionally, in a closet of one of the bedrooms of the home, agents located a .22 caliber Winchester long rifle and a .380 caliber handgun. Both firearms were loaded and very near another box of hypodermic needles that contained what appeared to be heroin. Also located in the closet was three scales, two pill bottles, a cut off can bottom with heroin residue, and a plastic bag filled with change and other drug paraphernalia. A search of the room where Barela had been located found a number of bags and containers which, when opened, contained speakers, amps, car charger kits, power tools, a chainsaw, and numerous personal items. All of the items in this room appeared to have been stolen due to the large quantity and because none of the items had been opened.

PSR ¶ 12, at 4.  The NMSP agents transported the items to the NMSP station, including ".25 ounces of a hard brown substance, that field tested positive for heroin; 97 needles that contained heroin totaling 27.35 milliliters; $1,876 in cash; six scales; and two firearms."  PSR ¶ 13, at 4. Barela admitted to the NMSP agents that "he was dealing drugs."  PSR ¶ 11, at 4.

## PROCEDURAL BACKGROUND

On October 30, 2013, Barela was charged with: (i) possessing a substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 1"); (ii) being a felon in possession of a firearm in violation of 18 US.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) ("Count 2"); and (iii) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("Count 3").  Indictment at 1-2, filed October 30, 2013 (Doc. 1)("Indictment").  On March 24, 2014, Barela pled guilty to Count 2 of the Indictment. See Plea Agreement ¶ 3, at 2.  The United States moved to dismiss Counts 1 and 3, see Motion to Dismiss Counts 1 and 3 of the Indictment, filed July 8, 2014 (Doc. 33), which the Court did on July 8, 2014, see Order Dismissing Counts 1 and 3 of the Indictment, filed July 8, 2014 (Doc. 34).

In the PSR, the United States Probation Office ("USPO") calculated Barela's base offense level at 20, under U.S.S.G. § 2K2.1, and applied a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6), for using or possessing any firearm in connection with another felony offense. See PSR ¶¶ 21-22, at 6.  In support of this enhancement, the PSR states: "In this case, two firearms and 27.35 milliliters of heroin were found in the defendant's home.  Based on this information, a four-level increase has been applied."  PSR ¶ 22, at 6.  The PSR notes a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for accepting responsibility and a 1-level reduction pursuant to U.S.S.G. § 3E1.1(b) for timely notifying authorities of an intention to enter a guilty

plea.  See PSR ¶ 28-29, at 6.  The PSR notes that Barela's total offense level is 22.  See PSR ¶ 30, at 6.  Based on prior convictions for distributing a controlled substance, for assaulting a household member, and for criminal damage to property, the PSR calculates a criminal history score of 4, which results in a criminal history category of III.  See PSR ¶¶ 33-36, at 7-8.  The PSR notes that the Guidelines imprisonment range for an offense level of 21 and a criminal history category of III is 46 to 57 months.  See PSR ¶ 59.

Barela makes two objections to the PSR.  First, Barela objects that the "amount of heroin is incorrect."  Objections at 2.  In his view, the "27.35 milliliters (27.35 grams), the amount of liquid recovered from the used syringes, as explained in a prior motion to continue, was not all heroin."  Objections at 2.  He explains that

> [w]hen a heroin user injects heroin into his vein some blood is released.  In a heavy intravenous heroin user some times veins are so badly scarred and damaged that it is hard to hit a healthy vein.  When that happens, heroin does not enter the vein but rather the user's blood backs into the syringe and he is unable to inject the heroin into the vein so the needle, now containing blood and heroin, is removed from the user's arm.

Objections at 2.  Barela contends that the "substance in the used hypodermic needles was not tested for the presence of human blood," and, thus, that the "amount of fluid in the syringes should not be used."  Objections at 2.  He asserts that only .25 ounces, or around seven grams, of heroin should be considered.  See Objections at 2.

Second, Barela objects to the application of § 2K2.1(b)(6).  See Objections at 2-5.  Barela contends that "[d]rug trafficking offenses and drug possession offenses are not treated the same for purposes of Section 2K2.1(b)(6)," because application note 14(B) applies in drug trafficking offenses and indicates that the "firearm necessarily has the potential of facilitating another felony," while application note 14(A) applies in drug possession cases, and the Court must "determine whether the firearm facilitated, or had the potential of facilitating," the drug

possession offense.  Objections at 3.  Because he asserts that the other felony is drug possession, and not drug trafficking, and because he was in his home, rather than out in public, he argues that "[t]here was absolutely no connection between the heroin Mr. Barela was preparing to use and the firearms that were in another room, in a closet."  Objections at 3-4.  He contends that his "possession of the firearm was merely coincidental to his possession of the heroin," and that the 4-level enhancement is improper.  Objections at 5.[1]

Responding to Barela's objection regarding the amount of heroin, the United States said that it "does not know the ratio of blood (if any) to heroin inside of the needles because laboratory analysis of the needles' content was not performed after Mr. Barela's guilty plea." Response to Defendant's Objection to the Presentence Report at 1 n.1, filed June 26, 2014 (Doc. 29)("Response").  The United States states that, even if the Court assumes that Barela is correct about the amount of heroin, the 4-level "enhancement is nonetheless appropriate because of the other evidence that Defendant was selling drugs."  Response at 1-2.  The United States asserts that,

> [w]hether or not Defendant intended to distribute the fluid-filled syringes, other drugs were found at his residence -- a plastic bag containing 5 grams of heroin, a metal spoon containing a small amount (.14 grams) of cocaine, and a scale with suspected heroin residue -- and Defendant plainly admitted to the agents who arrested him that he was selling drugs.  In a recorded conversation, one of the agents asked him if the heroin they had found was for "personal use or are you selling it?"  Defendant responded: "Selling it."  See PSR at ¶ 11 (stating that Defendant "admitted he was dealing drugs").  The presence of five additional scales and $1,876 in cash at Defendant's residence are further evidence of Defendant's distribution of narcotics.

---

[1] Barela initially requested the Court to vary from the Guidelines sentencing range, see Objections at 5-6, but later withdrew this this request, see Unopposed Motion to Withdraw Request for Variance, filed June 25, 2014 (Doc. 28).

Response at 2. The United States contends that this "evidence of distribution, combined with the close proximity of the firearms to the drugs and paraphernalia," supports the 4-level enhancement. Response at 2.

The United States alternatively argues that the 4-level enhancement is appropriate, because Barela "possessed the firearms in connection with another felony offense: receiving stolen property with a value over $250," in violation of N.M. Stat. Ann. § 30-16-11. Response at 2. The United States contends that, "[a]pplying the same logic as with drug trafficking offenses, the possession of firearms facilitates the possession of stolen goods. Due to the illicit nature of the business, Defendant could hardly call the police if a customer or associate turned violent or decided to steal the goods." Response at 2 (citing United States v. Rogers, 594 F.3d 517, 522 (6th Cir. 2010), cert. granted, judgment vacated, 131 S. Ct. 3018 (U.S. 2011)).

The USPO disclosed two addendums to the PSR. In the first Addendum to the Presentence Report, disclosed July 1, 2014 ("1st Addendum"), the USPO "stands by the assessment" of the amount of heroin as it listed in the PSR, including the 27.35 milliliters, and also maintains that the 4-level enhancement under § 2K2.1(b)(6)(B) applies, because Barela "maintained a usable amount of heroin in his residence, where weapons were easily accessible." 1st Addendum at 1. In the Second Addendum to the Presentence Report, disclosed July 8, 2014 ("2d Addendum"), the USPO states that "there is no information to verify the type of substance in each of the needles" that were found at Barela's residence. 2d Addendum at 1. The USPO notes that, while Barela used the needles to inject himself with heroin, the substance in the needles has not been confirmed to contain only heroin and it could contain other matter. See 2d Addendum at 1.

The Court held a sentencing hearing on July 8, 2014.  See Transcript of Hearing (taken July 8, 2014)("Tr.").[2]  Barela argued that the relevant issue concerning the 4-level increase for the firearms is whether he committed a drug-trafficking offense or a drug-possession offense. See Tr. at 48:25-49:10 (Katze).  He repeated his arguments from his Objections that drug trafficking and possession offenses are treated differently.  See Tr. at 49:23-50:18 (Katze). Barela noted that he was a heroin user, which the scarring on his arms from his heroin use evidences, and that, when he used heroin, some of his blood would seep into the needle.  See Tr. at 50:19-51:25 (Katze).  He argued that, because not all of the substance in the needles is heroin, he was only in possession of user amounts of heroin, and that the case should be treated as a drug-possession case and not a drug-distribution one.  See Tr. at 52:10-53:10 (Katze).  He also maintained that some of the scales that were found at his residence are broken, and that possession of scales and evidence of drug residue are indicative of drug possession.  See Tr. at 62:21-63:7 (Katze).  Barela argued that a drug dealer would have more drugs, more money t, and live in a nicer residence.  See Tr. at 64:1-15 (Katze).  Barela maintained that there is no nexus between his possession of heroin and the firearms, but that the firearms being in the house was a mere coincidence.  See Tr. at 53:11-24 (Katze).  He distinguished cases in which a person possessed both drugs and a firearm in public by arguing that, in those cases, a court could reason that the person had the firearm to protect himself or herself in the event that trouble arose from carrying drugs.  See Tr. at 54:9-24 (Katze).  Barela contends that, because he was within the privacy of his own home, the guns did not embolden him to possess the drugs.  See Tr. at 54:25-55:20 (Katze).  Barela addressed the United States' contention that he possessed stolen goods by arguing that there is no evidence that the goods were valuable or that they were stolen.  See Tr. at

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

60:25-61:8 (Katze).  He contended that the enhancement could not be based on possession of stolen property, because there is no evidence that the property in his residence was stolen other than the fact that it was unopened.  See Tr. at 49:11-22 (Katze).

The United States argued that it is not relying on the possession of drugs offense for the firearm enhancement and that, regardless of what substance is in the needles, there is enough evidence to find that Barela distributed drugs, because he admitted to selling drugs and there were six scales, $1,876.00 in cash, five grams of heroin, a metal spoon, and some drug residue at his residence.  See Tr. at 56:7-57:12 (Messec).  The United States maintains that, in addition to Barela's own admission, there is sufficient evidence to find that he was selling drugs.  See Tr. at 57:13-22 (Messec).  The United States noted that, if the Court rejected its drug-distribution argument, it would fall back on its possession-of-stolen-property argument.  See Tr. at 58:1-6 (Messec).  It maintained that Barela was not employed, yet he had a large quantity of unopened, expensive goods at his residence.  See Tr. at 58:7-21 (Messec).  The United States argued that the firearms were kept in Barela's residence in case someone tried to steal the stolen goods, which meant that the firearms facilitated his possession of the goods.  See Tr. at 58:22-59:9 (Messec).

The Court asked the United States about its statement in the Response that Barela stated that he was selling drugs, and the United States noted that it quoted Barela's exact words from his conversation with NMSP agents, which forms the basis of the USPO's statement in the PSR that Barela admitted to dealing drugs.  See Tr. at 60:1-18 (Messec, Court).  Barela argued that the recording of the NMSP agents' conversation is confusing to follow, but he conceded that it sounded like he stated that he was selling drugs.  See Tr. at 63:10-25 (Katze).

The Court overruled Barela's objection to the amount of heroin in the syringes, because it is moot in light of the 2d Addendum.  See Tr. at 64:18-25 (Court).  The Court held that the 4-level adjustment applied, because there is sufficient evidence to find by a preponderance of the evidence that Barela distributed drugs and that Barela used the firearms in connection with the distribution of drugs.  See Tr. at 68:9-70:8 (Court).  The Court noted, however, that it could not find by a preponderance of the evidence that Barela possessed stolen goods.  See Tr. at 70:9-14 (Court).  The Court then sentenced Barela to 46-months imprisonment.  See Tr. at 77:8-11 (Court).

## LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, thus making the Guidelines sentencing ranges effectively advisory. See 543 U.S. at 245.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines ranges are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines ranges are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 525 U.S. 38 (2007), as recognized in United States v. White, 265 F. App'x 719, 728 n.8 (10th Cir. 2008)(unpublished).  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence

for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted).

A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct."  18 U.S.C.

§ 3553(a)(6). See United States v. Booker, 543 U.S. at 261-62.

 The Tenth Circuit has "joined a number of other circuits in holding that a sentence within

the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d

1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338,

349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th

Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial

court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States,

552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial

court must undertake the § 3553(a) balancing of factors without any presumption in favor of the

advisory[3] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States,

552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[3]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

_____

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, No. CR 10-1919-002, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).  The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.   See United States v. Alemendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010) (Browning, J.).  On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction."  2011 WL 831279, at *14.

### LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490.  In

Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in

Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the

maximum sentence a judge may impose solely on the basis of the facts reflected in the jury

verdict or admitted by the defendant."   542 U.S. at 303 (emphasis omitted)(citations

omitted)(internal quotation marks omitted).  In United States v. Booker, the Supreme Court held

that, because the sentencing guidelines are no longer mandatory, "Apprendi does not apply to the

present advisory-Guidelines regime."   United States v. Ray, 704 F.3d 1307, 1314 (10th

Cir. 2013).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the

Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory

and imposes binding requirements on all sentencing judges -- the statute falls outside the scope

of Apprendi's requirement." (alterations omitted)(internal quotations marks omitted)).    The

Supreme Court has recently held that the requirements in Apprendi v. New Jersey apply to facts

that increase a defendant's mandatory minimum sentence.  Alleyne v. United States, 133 S. Ct.

2151, 2155 (2013).

　　　In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that

Blakely v. Washington and United States v. Booker did not change the district court's

enhancement-findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United

States v. Magallanez involves plain-error review of a drug sentence in which a jury found the

defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute

methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special

interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing,

however, the judge -- based on testimony of the various amounts that government witnesses

indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.   The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.   See United States v. Magallanez, 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker made the Guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence out to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[4]  "[T]he application of an enhancement . . . does not

---

[4]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the preponderance of the evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher

implicate the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may only assert an error under Apprendi v. New Jersey where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, No. 12-5016, 2014 WL 6679446, at *6 (10th Cir. Nov. 25, 2014)(unpublished)[5](holding that,

---

standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation); United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance of the evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[5]United States v. Hendickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").  As the Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in Alleyne v. United States, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from Apprendi v. New Jersey, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26[ (D.N.M. Aug. 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

## LAW REGARDING U.S.S.G. § 2K2.1(b)(6)

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  Application Note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1, Application Note 14(A).  "The plain and commonly understood meaning of 'facilitate' is to make easier."  United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011)(citing United States v. Gandy, 36 F.3d 912, 914 (10th Cir. 1994)

_____

with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Hendrickson and United States v. Fent, 199 F. App'x 724 (10th Cir. 2006)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

(recognizing that "facilitate" means "to make easier"); Black's Law Dictionary 668 (9th ed. 2009)(defining "facilitate" as "[t]o make the commission of a crime easier")).

> In <u>Smith v. United States</u>, 508 U.S. 223 . . . (1993), on which Application Note 14(A) is based, U.S.S.G. app. C amend. 691, the Supreme Court interpreted the term "in relation to." <u>Id.</u> at 238 . . . . It stated: "the gun at least must facilitate, or have the potential of facilitating, the [other] offense" and "its presence or involvement cannot be the result of accident or coincidence." <u>Id.</u> (quotations and brackets omitted); <u>see also</u> <u>United States v. Taylor</u>, 413 F.3d 1146, 1154 (10th Cir. 2005); <u>United States v. Constantine</u>, 263 F.3d 1122, 1126 (10th Cir. 2001).

<u>United States v. Marrufo</u>, 661 F.3d at 1207-08.

The Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of U.S.S.G. § 2K2.1(b)(6). <u>See, e.g.</u>, <u>United States v. Bunner</u>, 134 F.3d 1000, 1006 (10th Cir. 1998); <u>United States v. Gomez-Arrellano</u>, 5 F.3d 464, 467 (10th Cir. 1993). In <u>United States v. Bunner</u>, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers['] trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."[6] 134 F.3d at 1006. Similarly, in <u>United States v. Pacheco</u>, No. CR 13-2643 JB, 2014 WL 3421063 (D.N.M. July 8, 2014)(Browning, J), the Court applied the 4-level enhancement when firearms were found in a trailer that contained heroin and digital scales. <u>See</u> 2014 WL 3421063, at *13-14.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender." <u>United States v. Regans</u>, 125 F.3d 685, 687 (8th Cir. 1997). The Eighth Circuit has also held that

---

[6]U.S.S.G. § 2K2.1(b)(5) is now U.S.S.G. § 2K2.1(b)(6). <u>See</u> U.S.S.G. § 2K2.1.

a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002)(per curiam).   The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F. App'x 724, 727 (10th Cir. 2006)(unpublished)(holding that the enhancement applied where the defendant possessed a firearm in connection with possessing methamphetamine).   In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.   See 199 F. App'x at 725-26.   The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search.  See 199 F. App'x at 726.  The defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  See 199 F. App'x at 726.  Nonetheless, the district court found, by a preponderance of the evidence, that the firearm was possessed in connection with felony possession of methamphetamine.  See 199 F. App'x at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'"  199 F. App'x at 727 (quoting with approval the district court).  The Tenth Circuit affirmed.  See 199 F. App'x at 727.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.  See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs"); United States v. Cunningham,

No. CR 06-2493 JB, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.). Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered.  See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003)(rejecting the defendant's argument that "the quantity of drugs seized was too minute for anything other than personal use and that the government failed to establish a connection between the firearms and the drugs," because a controlling Fifth Circuit case -- United States v. Condren, 18 F.3d 1190 (5th Cir. 1994) -- held that "a defendant possessing the firearm 'in connection with' either drug possession or distribution triggered the sentence enhancement"); United States v. Green, 255 F. App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and small amount of drugs for personal use); United States v. Moran-Paz, 35 F. App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

In United States v. Justice, 679 F.3d 1251 (10th Cir. 2012), the Tenth Circuit stated that it agrees "with several other circuits that have held that possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense."  679 F.3d at 1255.  In that case, the defendant "was carrying methamphetamine on his person," the "firearms were within easy reach, and they were loaded"; thus, the Tenth Circuit concluded that "[a] reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force."  679 F.3d at 1255.  The Tenth Circuit cautioned, however, that "emboldenment is not always present when firearms are near drugs."  679 F.3d at 1256 (citing United States v. Jeffries, 587 F.3d 690, 691-695 (5th Cir. 2009)(rejecting the emboldenment theory when the defendant took a gun from another man after a violent altercation, got into his car, picked up his girlfriend, was stopped by the police

almost immediately thereafter, and police found the gun on the driver's seat and a rock of cocaine on the floor behind the seat, because, even if the cocaine belonged to the defendant, the evidence was insufficient to establish that the gun emboldened him); United States v. West, 643 F.3d 102, 115-16 (3d Cir. 2011)(rejecting application of emboldenment theory when marijuana found in glove compartment and revolver found in backpack in trunk of defendant's car); United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008)(holding that emboldenment theory not applicable because defendant did not venture from home into public with the drugs or firearms)). The Tenth Circuit emphasized that the factual setting must support the emboldenment theory, but concluded that,

> when the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer from the proximity of the weapon to the drugs is not coincidental and that the firearm "facilitated, or had the potential of facilitating," the drug offense by emboldening the possessor.

United States v. Justice, 679 F.3d at 1256.

An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008).  In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-85.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

The Court has noted that the 4-level enhancement has four distinct elements and that "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or

ammunition; (iii) in connection with; (iv) another felony offense." United States v. Kepler, No. CR 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)).   In that case, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun. See 2012 WL 592422, at *6.  The Court explained that,

> [g]iven that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies.  While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

2012 WL 592422, at *6.

## ANALYSIS

The Court will sustain the Objections in part and overrule them in part.   There is insufficient evidence to find that the substance found in the ninety-seven syringes was only heroin, and, thus, the Court will not consider the 27.35 milliliters of liquid in the syringes in calculating the total amount of heroin.   Based on Barela's admission, the scales, the .25 milliliters of heroin, and the drug paraphernalia, the Court finds by a preponderance of the evidence that Barela was trafficking drugs.   Additionally, because Barela used the firearms in connection with the felony of trafficking drugs, the Court will apply the 4-level enhancement under § 2K2.1(b)(6) and will sentence Barela to 46-months imprisonment.

## I. THE COURT WILL SUSTAIN BARELA'S OBJECTION TO THE 27.35 MILLILITERS OF LIQUID THAT THE AGENTS FOUND IN SYRINGES.

The Court will sustain Barela's objection to the amount of heroin listed in the PSR. While the PSR originally stated that the syringes found in Barela's residence contained 27.35 milliliters of heroin, see PSR ¶ 12, at 4, the USPO issued an addendum that stated that it is not confirmed that the 27.35 milliliters is only heroin, see 2d Addendum at 1. The United States has not tested the liquid in the syringes, and the United States has not insisted that the syringes contained only heroin. There is thus insufficient evidence to find by a preponderance of the evidence that the substance found in the syringes was purely heroin. The Court will accordingly sustain Barela's objection to the amount of heroin found in the syringes and will consider only the .25 ounces, or seven grams, of heroin that the NMSP agents field tested and confirmed to be heroin.

## II. THERE IS SUFFICIENT EVIDENCE TO ESTABLISH THAT BARELA USED OR POSSESSED A FIREARM IN CONNECTION WITH ANOTHER OFFENSE, SUPPORTING THE 4-LEVEL ENHANCEMENT UNDER § 2K2.1(b)(6).

Section 2K2.1(b)(6) provides for a 4-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Application Note 14(a) explains that § 2K2.1(b)(6)(B) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." U.S.S.G. § 2K2.1, Application Note 14(A). Application Note 14(A) goes on to explain that, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," the 4-level enhancement "is warranted because the presence of the firearm has the potential of facilitating

another felony offense or another offense, respectively."   U.S.S.G. § 2K2.1, Application Note 14(B).   Thus, Barela is correct to note that, if the other offense is a drug possession offense, rather than a drug-trafficking offense, the close proximity of the drugs to the firearm does not necessarily support the enhancement, and the Court must find that the firearm facilitated or had the potential of facilitating the drug-possession offense.

If Barela merely possessed the heroin and did not distribute it, the Court would sustain Barela's objection.   Courts often look to whether a firearm emboldens the defendant to possess the drugs; this conclusion is more readily reached when the defendant is out in public with the drugs and the firearm.   See United States v. Justice, 679 F.3d at 1255 (concluding that, when the defendant was carrying methamphetamine as well as a loaded firearm, "[a] reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force").   On the other hand, when the defendant is not in public, some courts have rejected the emboldenment theory.   See United States v. Smith, 535 F.3d at 886 (rejecting emboldenment theory, because the defendant did not venture from his home into public with the drugs or firearms).

The Court does not think that the facts in this case demonstrate that Barela used or possessed the firearms, located in a bedroom closet, in connection with the offense of possessing heroin.   That is, the firearm did not facilitate or have the potential of facilitating Barela's drug possession offense, because there is no evidence to indicate that the firearm emboldened Barela to possess the heroin in his house.

The United States argues that, instead of relying on the felony of drug possession, the Court should consider Barela's other felony offense to be drug trafficking.   See Response at 1-2. From the PSR, the United States points to Barela's admission that he "admitt[ed] he was dealing

drugs," PSR ¶ 11, at 4, that he had .25 ounces of a substance that field tested positive for heroin, see PSR ¶ 13, at 4, and that he had various drug paraphernalia in the closet where the firearms were located, including a box of hypodermic needles, three scales, two pill bottles, a cut off can bottom with heroin residue, and a plastic bag filled with change and other drug paraphernalia, see PSR ¶ 12, at 4.   The United States also lists additional information in the Response supporting a finding that Barela was trafficking drugs, including his admission that he was selling the heroin that the agents found.  See Response at 2 ("In a recorded conversation, one of the agents asked him if the heroin they had found was for 'personal use or are you selling it?' Defendant responded: 'Selling it.'").  At the hearing, Barela acknowledged that there is evidence that seems to indicate that he admitted to selling drugs, but Barela refused to admit that he made such an admission.  See Tr. at 63:10-25 (Katze).  In any case, even if the Court does not rely on the United States' representation of what Barela said, the PSR notes that Barela "admitt[ed] he was dealing drugs," PSR ¶ 11, at 4, and Barela has not objected to that statement.

There is sufficient evidence to find that Barela's other felony offense is a drug-trafficking offense, thus supporting the application of the § 2K2.1(b)(6)(B) enhancement.  Although the Court will exclude the 27.35 milliliters of liquid found in syringes, the Court will consider the .25 ounces of heroin, or roughly seven grams, that was field tested and to which Barela has not objected.  This amount of heroin, together with Barela's admission that he was dealing drugs, the $1,876.00 in cash, the six scales, and the boxes of hypodermic needles, supports the conclusion that Barela's other offense is a drug trafficking.  While Barela contends that some of the scales were broken and that a scale can be used by a drug user as well as a drug dealer, the number of scales in Barela's residence supports a finding that he was trafficking drugs and not merely using drugs.  See United States v. Triana, 477 F.3d 1189, 1195 (10th Cir. 2007)(stating that scales are

"tools of the drug trade," which a jury could use to infer an intent to distribute); <u>United States v. Fudge</u>, 175 F. App'x 694, 698 (6th Cir. 2006)(unpublished)(referring to a digital scale as a "classic trapping[] of drug dealing"); <u>United States v. Koons</u>, 300 F.3d 985, 995 (8th Cir. 2002)(noting that scales are evidence of drug dealing); <u>United States v. Chavez</u>, 10 F. App'x 426, 427 (9th Cir. 2001)(unpublished)(stating that scales are evidence that can support a finding of a conspiracy to distribute drugs); <u>United States v. Boissoneault</u>, 926 F.2d 230, 234 (2d Cir. 1991)(stating that scales are "paraphernalia usually possessed by drug dealers").   While the NMSP agents did not find large quantities of drugs in Barela's residence, the quantity that they found -- excluding the 27.35 milliliters from the syringes -- is still more heroin than was found in <u>United States v. Pacheco</u>, where the Court found that the defendant was trafficking drugs and where the Court applied § 2K2.1(b)(6)'s 4-level enhancement.   <u>See</u> 2014 WL 3421063, at *12-14 (noting that the United States found 2.5 grams of heroin, two digital scales, and drug paraphernalia).  With Barela's admission and the other evidence found at his residence, the Court concludes that he was trafficking drugs from his residence.

Application Note 14(B) states that § 2K2.1(b)(6) applies in a drug trafficking case when "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."   U.S.S.G. § 2K2.1(b)(6), Application Note 14(B).   In the same closet that the firearms were found, NMSP agents found a bag containing needles, three scales, two pill bottles, a cutoff can bottom with heroin residue, and a plastic bag filled with change and other drug paraphernalia.  <u>See</u> PSR ¶ 12, at 4.  The firearms were thus found in close proximity to drugs, drug-manufacturing materials, and drug paraphernalia.  <u>See</u> U.S.S.G. § 2K2.1(b)(6), Application Note 14(B).

In <u>United States v. Pacheco</u>, the Court applied § 2K2.1(b)(6)'s 4-level enhancement when a firearm was found in the same trailer as a small amount of heroin, two digital scales, and drug paraphernalia.  <u>See</u> 2014 WL 2014 WL 3421063, at *12-14.  The Court reasoned that, in addition to the close proximity between the drugs and the firearm, the defendant could have used the firearm to facilitate drug trafficking by using it to protect himself and his drug supply.  <u>See</u> 2014 WL 3421063, at *14.  Here, the firearms were found in the same closet as Barela's drugs, scales, and drug paraphernalia.  <u>See</u> PSR ¶ 11, at 4.  The close proximity between the drug-dealing tools and the firearm, and that Barela could have used the firearms to protect himself and his drugs, leads to the conclusion that he possessed the firearms in connection with another felony -- trafficking drugs.  Accordingly, the Court overrules Barela's objection and will apply the 4-level enhancement.

The Court does not conclude, however, that there is sufficient evidence to support a finding, by a preponderance of the evidence, that Barela possessed stolen goods.  A preponderance of the evidence does not support a finding that the items were stolen, as the only thing supporting that finding is that there was a large number of items that were unopened.  Possessing unopened items, without more, is insufficient for the Court to find, by a preponderance of the evidence, that the items were stolen.

**IT IS ORDERED** that: (i) the Defendant's Objections to Presentence Report, filed June 6, 2014 (Doc. 116), are sustained in part and overruled in part; and (ii) Defendant Isaac Barela is sentenced to 46-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Paige Messec
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Margaret A. Katze
  Assistant Federal Public Defender
Albuquerque, New Mexico

      *Attorneys for the Defendant*